**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**James A. BRAY, Defendant–Appellant.**

**No. 96–2261.**

United States Court of Appeals,
Sixth Circuit.

Submitted Nov. 5, 1997.

Decided April 6, 1998.

Admission of summary charts is a matter within the discretion of the district court, whose decisions in such matters will be upheld absent an abuse of discretion.

Arthur M. Fitzgerald (briefed), Bay City, MI, for Defendant–Appellant.

Michael Hluchaniuk (briefed), Office of the U.S. Attorney, Bay City, MI, for Plaintiff–Appellee.

Before: RYAN, SUHRHEINRICH, and COLE, Circuit Judges.

## OPINION

RYAN, Circuit Judge.

We consider in this case the difference between document summaries received in evidence as substantive exhibits under Fed. R.Evid. 1006, and those not received in evidence but used in trial as pedagogical devices under Fed.R.Evid. 611(a). We also consider the appropriate jury instructions as to each.

The defendant, James A. Bray, appeals from the judgment entered following a jury trial in which he was convicted of embezzling some $20,000 during the course of his employment with the United States Postal Service. He argues that the district court abused its discretion in admitting exhibits that summarized voluminous underlying documents without admitting the underlying documentation and without giving a limiting instruction. We conclude that the district court did not abuse its discretion and, thus, affirm the defendant's convictions.

### I.

#### A.

James Bray and his eventual codefendant Robert Owczarzak worked together as postal employees in Bay City, Michigan for over 20 years and, over the course of time, became close friends. Sometime beginning in 1988 they began engaging in fraudulent activities. Their initial scheme, not at issue in this case, involved stealing funds collected for postage-due mail and dividing the proceeds—some $25 per day—between themselves. This scheme ended in 1989.

Both Bray and Owczarzak were transferred in 1989 to a Bay City postal substation, where they were the sole full-time employees. They worked as window clerks, selling stamps and other items. At some point in late 1989, Owczarzak began embezzling, taking money from the cash he received for the sale of postage stamps. His scheme was doomed to fail, however, because the accounts of window clerks are audited by supervisors at least once every 120 days. Postal clerks keep track of all their daily transactions on forms known as 1412 forms;

during an audit, a supervisor counts a clerk's stock of stamps plus his cash on hand—referred to as the clerk's "accountability"—and then compares the 1412 forms with stamp-requisition forms to determine whether the money taken in by the clerk corresponds with the number of stamps sold. On one occasion, in order to conceal his embezzlement before a scheduled audit, Owczarzak asked Bray to lend him some of Bray's stamp stock, so that his accountability would accord with the written records.

Apparently, Bray decided that Owczarzak's newest scheme sounded like a good idea. Therefore, he too began embezzling, and he and Owczarzak began trading stamp stock back and forth at the time of the periodic audits. By January 1995, the two together had embezzled approximately $52,000, approximately 40% of which was attributable to Bray. It was at this time that Bray's accounts were subjected to a surprise audit. Although he managed to importune a part-time clerk to give him some stamps temporarily, he borrowed too much and the resulting $800 overage triggered an investigation. When, subsequently, Owczarzak asked to borrow some of Bray's stamps in order to cover an upcoming audit of his own, Bray refused; Owczarzak then confessed the entire scheme to postal authorities, implicating Bray.

### B.

The two were indicted in March 1996, and each was charged with one count of conspiracy to embezzle money in the course of their employment with the Postal Service, in violation of 18 U.S.C. § 371, and one count of embezzling money in the course of their employment with the Service, and aiding and abetting thereof, in violation of 18 U.S.C. §§ 1711, 2. In addition, Bray was charged with one count of making a false statement in order to conceal his embezzlement from the Postal Service, in violation of 18 U.S.C. § 1001. Owczarzak pleaded guilty pursuant to a plea agreement and testified at Bray's trial as a government witness. Bray was convicted on all counts, and the district court sentenced him to 17 months' imprisonment and ordered that he make restitution in the amount of $52,169.64.

### II.

### A.

At Bray's trial, the government offered in evidence, and the district court admitted, four exhibits—112, 113, 114, and 115. All four were charts prepared by Postal Inspector William Pollard, based on information he derived from forms 1412, and all four contained analysis of the records relating to the reported sales of stamps compared to the stamps ordered. The first two charts, exhibits 112 and 113, summarized the information relating to Bray and Owczarzak's activities in 1993 and 1994, compiling it on a quarterly basis; the second two charts, exhibits 114 and 115, summarized the same data for the employees who replaced Bray and Owczarzak, but because the data spanned only a four-month period, the charts compiled the data only on a monthly basis. The charts for Bray and Owczarzak reflected a consistent pattern of sales but increased stamp orders over time; the charts for the replacement employees showed basically identical levels of sales and stamp orders. According to Pollard, the contrast in these patterns supported the government's allegation of embezzlement, as it indicated that the conspirators needed to make increasingly large stamp orders in order to make their figures balance at audit time.

At trial, the government first moved to admit exhibits 112 and 113, after laying a foundation and establishing that the two exhibits were prepared based on information derived from the forms 1412. Defense counsel explicitly stated that he had "[n]o objection," and the court ruled, "112 and 113 are received under the rule for summaries." The court then stated that it believed the "rule for summaries" "actually allows them not to be received formally as exhibits." The government disagreed, stating, "I think the underlying data doesn't have to be admitted, but I think the summaries themselves are." The court indicated that it would consider the question, and instructed the government to continue with its questions.

The government then moved to introduce exhibits 114 and 115. At this point, the defense counsel objected:

I would object, your Honor, on two grounds. Number one being that they don't have anything to do with our particular case as to establishing—

. . . .

Relevance number one.

Number two, he's testified there would be fluctuations for such things as Christmas and other holidays, changes of rates. These new exhibits don't—only cover approximately four months and don't reflect any of those, and I think it would mislead the jury.

The court characterized this as an objection on the basis of relevancy, and then ruled as follows, *sua sponte* giving a limiting instruction:

I'm going to receive the exhibits. The jury certainly is properly informed as to the limitations, the time periods obviously are not the same, and certainly cross examination can proceed by questioning that aspect if it's not already clearly made out.

Let me also suggest to the jury with respect to these charts, 112 and 113, now 114 and 115 which I will receive, charts or summaries that are made up by a witness are kind of a special category; I'm going to allow them to be received, but they're not in themselves really substantial evidence. The rules say they have to be derived from the things which are available from real documents, real figures and so forth. Charts, graphs, summaries and so forth can be properly prepared by a witness and received into evidence, but the court, the lawyers, and the jury especially, should remain aware that it is the underlying data summarized in the chart which is the real evidence or the real matter of substance.

The chart itself is essentially a witness' . . . picture of what that data looks like in a particular form.

Following the close of the government's case, defense counsel requested that an instruction similar to the above be included at the time of full jury instructions:

[DEFENSE COUNSEL]: . . . I would ask that the court include in its final copy the instruction as to summaries.

THE COURT: As to summaries. Well, I probably will have to do that on the fly much as I have done here. I'll be happy to do that unless there's some reason I shouldn't. . . .

[AUSA]: . . . I don't know that there's any special instruction that's necessary or even appropriate on summaries. I mean, other than just defining what a summary is, I don't think it's necessarily discounted evidence. To suggest it's not worth as much as the original documents unless there's a challenge to the translation of the information from the original documents to the summary, I guess it doesn't seem to me that an additional instruction is necessary.

The court and the prosecutor then agreed to do further research on the question, and the issue was set aside.

The following day, the prosecutor invited the court's attention to case law suggesting a distinction between summaries submitted under Fed.R.Evid. 1006 and those submitted under 611(a). The prosecutor explained that the government's exhibits were offered under Rule 1006—that is, they were "nonargumentative, basically neutral" and "relate[d] to evidence that is not necessarily admitted but is voluminous or inconvenient for the court to consider"—and that, as such, did not require a limiting instruction. Defense counsel took the position that "the charts being offered are clearly argumentative. . . . [C]harts showing comparisons between nonindicted persons and indicted persons are not being offered just to compile evidence in a readable form for the jury, they're argumentative." He then asserted that he "object[ed] to those charts coming in." The court indicated that it would do still more research.

Later that same day, the prosecutor again raised the question; he argued that no instruction was appropriate, and, further, that the government would be prejudiced by a limiting instruction since the government had chosen not to admit the underlying data into evidence. Defense counsel responded that "[t]he court already has given that [limiting] instruction, the U.S. Attorney was put on notice that that was the instruction, and now to argue he somehow is prejudiced by that

because he didn't put the other evidence in when he knew what the court[']s instruction was . . . is inappropriate."

The court concluded that "[t]he summaries in evidence here are 1006 summaries and do not require the kind of limiting instruction" it had already given, and that therefore, the court would "not give a limiting instruction or say anything further about these documents." The court further noted its inclination "to, if the need [were to] arise[ ], clarify what [it] said earlier to the jury about the introduction of these exhibits at the time they were introduced." Defense counsel asserted that he "did not object to those or to the foundation of those exhibits based on the assertion by the court that the limiting instruction would be given," and that he was now "in an untenable position." At the prosecutor's suggestion, the court offered the defense the opportunity to reopen proofs to present any challenge it wished to the foundation for the exhibits, but defense counsel declined.

## B.

### 1.

■ Bray now argues that the district court committed reversible error by admitting the government's summary exhibits without admitting the underlying documents and without giving a limiting instruction. "The admission of summary charts is a matter within the discretion of the district court, whose decisions in such matters will be upheld absent an abuse of discretion." *United States v. Williams,* 952 F.2d 1504, 1519 (6th Cir.1991) (citation omitted).

### 2.

Rule 1006 of the Federal Rules of Evidence provides:

The contents of voluminous writings, recordings, or photographs which cannot conveniently be examined in court may be presented in the form of a chart, summary, or calculation. The originals, or duplicates, shall be made available for examination or copying, or both, by other parties at [a] reasonable time and place. The

court may order that they be produced in court.

Fed.R.Evid. 1006.

■ The text of the Rule and the cases construing it make clear that there are several preconditions to admitting a 1006 summary chart. First, the documents (or recordings or photographs) must be so "voluminous" that they "cannot conveniently be examined in court" by the trier of fact. That is, the documents must be sufficiently numerous as to make comprehension "difficult and . . . inconvenient." *United States v. Seelig,* 622 F.2d 207, 214 (6th Cir.1980); *see Martin v. Funtime, Inc.,* 963 F.2d 110, 115 (6th Cir.1992). On the other hand, it is not necessary that the documents be *so* voluminous as to be "literally impossible to examine." *United States v. Scales,* 594 F.2d 558, 562 (6th Cir.1979).

■ Second, the proponent of the summary must also have made the documents "available for examination or copying, or both, by other parties at [a] reasonable time and place." Fed.R.Evid. 1006; *see Scales,* 594 F.2d at 562.

The purpose of this requirement is to provide the opposing party who desires to attack the authenticity or accuracy of a chart, summary, or calculation, with an opportunity to prepare for cross-examination, or to offer exhibits of its own as rebuttal evidence, which would serve to counteract the impression made on the jury by the proponent's witness.

6 Weinstein's Federal Evidence § 1006.06[1], p. 1006–14 (Joseph M. McLaughlin ed., 2d ed.1997).

■ Third, and relatedly, " '[c]ommentators and other courts have agreed that Rule 1006 requires that the proponent of the summary establish that the underlying documents are admissible in evidence.' " *Martin,* 963 F.2d at 116 (emphasis omitted) (quoting *United States v. Johnson,* 594 F.2d 1253, 1256 (9th Cir.1979)). Thus, if the underlying documents are hearsay and not admissible under any exception, a chart or other summary based on those documents is likewise inadmissible. *See generally* Fed.R.Evid. 801–805. The same principle would render

inadmissible a summary based on documents that are inadmissible for any other reason, such as irrelevancy, unfair prejudice, or lack of authenticity. *See generally* Fed.R.Evid. 401–403, 901(a). But given Rule 1006's provision that the underlying documents need not themselves be in evidence, however, it is plain that a summary admitted under Rule 1006 is itself the evidence that the trier of fact should consider. *See* 2 MCCORMICK ON EVIDENCE § 233, p. 68 (John W. Strong ed., 4th ed.1992); 6 WEINSTEIN'S FEDERAL EVIDENCE § 1006.04[2], p. 1006–7 (Joseph M. McLaughlin ed., 2d ed.1997).

 Fourth, reasonably enough, a summary document "must be accurate and non-prejudicial." *Gomez v. Great Lakes Steel Div., Nat'l Steel Corp.,* 803 F.2d 250, 257 (6th Cir.1986). This means first that the information on the document summarizes the information contained in the underlying documents accurately, correctly, and in a non-misleading manner. Nothing should be lost in the translation. It also means, with respect to summaries admitted in lieu of the underlying documents, that the information on the summary is not embellished by or annotated with the conclusions of or inferences drawn by the proponent, whether in the form of labels, captions, highlighting techniques, or otherwise. Once a Rule 1006 summary is admitted, it may go to the jury room, like any other exhibit. Thus, a summary containing elements of argumentation could very well be the functional equivalent of a mini-summation by the chart's proponent every time the jurors look at it during their deliberations, particularly when the jurors cannot also review the underlying documents.

 Fifth and finally, a summary document must be " 'properly introduced before it may be admitted into evidence.' " *Martin,* 963 F.2d at 115–16 (quoting *Scales,* 594 F.2d at 563). In order to lay a proper foundation for a summary, the proponent should present the testimony of the witness who supervised its preparation. *See Scales,* 594 F.2d at 562–63.

### 3.

#### a.

Bray does not challenge the voluminousness of the underlying documents, that is, the forms 1412. Since the scheme continued over a two-year period, and since the forms were completed on a daily basis, we estimate that there would be more than 500 forms for each of Bray and Owczarzak. In addition, there would be about 100 forms for each of the two replacement employees. Given this volume, it seems to us that the forms 1412 could not have been "conveniently . . . examined in court," Fed.R.Evid. 1006, by the jury. However, because the issue is not before us, we simply assume but do not decide that the forms 1412 were sufficiently numerous to satisfy Rule 1006.

#### b.

 Bray claims in this appeal that the forms 1412 were not "proffered to the defense until after the United States attorney had rested," in violation of the Rule's requirement that the underlying documents be made "available for examination or copying, or both, by other parties at [a] reasonable time and place." The government responds in its brief, although without citation to the record, that it provided the defense with copies of the charts, as well as the underlying documents, prior to trial. Thus, the record is unclear about when the government first made available to Bray the forms 1412.

What the record does make clear, however, is that Bray did not raise *this* objection to the summaries in the district court. *See* Fed.R.Evid. 103(a)(1). Thus, he must establish the existence of plain error. *See* Fed. R.Evid. 103(d); Fed.R.Crim.P. 52(b); *United States v. Barrow,* 118 F.3d 482, 491 (6th Cir.1997). Assuming for the sake of argument that the forms 1412 were not made available to Bray in a timely manner, we conclude that there was no plain error. At the government's suggestion, the court offered the defense the opportunity to reopen proofs to present any challenge it wished to the foundation for the exhibits, but defense counsel declined. This opportunity was sufficient to mitigate any prejudice that might

have resulted from untimely disclosure. Moreover, even now Bray does not contend that the summaries did not accurately represent the information on the forms 1412, nor does he explain how timely disclosure would have made a difference.

### c.

Because the summaries were admitted under Rule 1006, the district court did not err by failing to require that the underlying documents be in evidence.

### d.

■ Since Rule 1006 authorizes the admission in evidence of the summary itself, it is generally inappropriate to give a *limiting* instruction for a Rule 1006 summary. This is a point, however, on which in the past this court has been less than clear. In *United States v. DeBoer*, 966 F.2d 1066 (6th Cir. 1992), for example, the court observed in *dicta* that "the district court properly instructed the jury that the [Rule 1006] summaries ... were not evidence or proof of facts." *Id.* at 1069. Other opinions likewise suggest a pervasive misunderstanding. *Cf. Seelig*, 622 F.2d at 214; *Scales*, 594 F.2d at 563–64.

The problem hinges on the distinction between Rule 1006 summaries and summaries used as "pedagogical devices," which are more properly considered under Rule 611(a). The distinction was clearly explained in *Gomez:*

> Contents of charts or summaries admitted as evidence under Rule 1006 must fairly represent and be taken from underlying documentary proof which is too voluminous for convenient in-court examination, and they must be accurate and nonprejudicial. Such summaries or charts admitted *as evidence* under Rule 1006 are to be distinguished from summaries or charts used as pedagogical devices which organize or aid the jury's examination of testimony or documents which are themselves admitted into evidence. Such pedagogical devices "are more akin to argument than evidence.... Quite often they are used on summation." Generally, such a summary is, and should be, accompanied by a limit-

ing instruction which informs the jury of the summary's purpose and that it does not itself constitute evidence.

*Gomez*, 803 F.2d at 257–58 (citations omitted). In other words, summary exhibits that are used as pedagogical devices do not, "strictly speaking, ... fall within the purview of Rule 1006." *United States v. Paulino*, 935 F.2d 739, 753 (6th Cir.1991).

■ We understand the term "pedagogical device" to mean an illustrative aid such as information presented on a chalkboard, flip chart, or drawing, and the like, that (1) is used to summarize or illustrate evidence, such as documents, recordings, or trial testimony, that has been admitted in evidence; (2) is itself not admitted into evidence; and (3) may reflect to some extent, through captions or other organizational devices or descriptions, the inferences and conclusions drawn from the underlying evidence by the summary's proponent. This type of exhibit is " 'more akin to argument than evidence' since [it] organize[s] the jury's examination of testimony and documents already admitted in evidence." *Id.; see also United States v. Wood*, 943 F.2d 1048, 1053–54 (9th Cir.1991); *cf. United States v. Sawyer*, 85 F.3d 713, 740 (1st Cir.1996). Trial courts have discretionary authority to permit counsel to employ such pedagogical-device "summaries" to clarify and simplify complex testimony or other information and evidence or to assist counsel in the presentation of argument to the court or jury. This court has held that Fed.R.Evid. 611(a) provides an additional basis for the use of such illustrative aids, as an aspect of the court's authority concerning the "mode ... of interrogating witnesses and presenting evidence." *Paulino*, 935 F.2d at 753 n. 7. The rule states:

> The court shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to (1) make the interrogation and presentation effective for the ascertainment of the truth, (2) avoid needless consumption of time, and (3) protect witnesses from harassment or undue embarrassment.

Fed.R.Evid. 611(a).

We note in passing that in appropriate circumstances not only may such pedagogi-

cal-device summaries be used as illustrative aids in the presentation of the evidence, but they may also be admitted into evidence even though not within the specific scope of Rule 1006. Such circumstances might be instances in which such pedagogical device is so accurate and reliable a summary illustration or extrapolation of testimonial or other evidence in the case as to reliably assist the factfinder in understanding the evidence, although not within the specific requirements of Rule 1006.

To recapitulate, there are three kinds of summaries:

(1) **Primary-evidence summaries**, such as those at issue here, which summarize "voluminous writings, recordings, or photographs" that, because they are so voluminous, "cannot conveniently be examined in court." Fed.R.Evid. 1006. In this instance, the summary, and not the underlying documents, is the evidence to be considered by the factfinder. *See* 1 EDWARD J. DEVITT ET AL., FEDERAL JURY PRACTICE AND INSTRUCTIONS § 14.02 (4th ed.1992); 1 LEONARD B. SAND ET AL., MODERN FEDERAL JURY INSTRUCTIONS (Criminal) ¶ 5.05, p. 5–34 (1997).

(2) **Pedagogical-device summaries** or illustrations, such as chalkboard drawings, graphs, calculations, or listings of data taken from the testimony of witnesses or documents in evidence, which are intended to summarize, clarify, or simplify testimonial or other evidence that has been admitted in the case, but which are not themselves admitted, instead being used only as an aid to the presentation and understanding of the evidence. For these the jury should be instructed that the summaries are not evidence and were used only as an illustrative aid. *See* 1 DEVITT, *supra*, § 14.02; 1 SAND, *supra*, ¶ 5.05, p. 5–35.

(3) **Secondary-evidence summaries** that are a combination of (1) and (2), in that they are not prepared entirely in compliance with Rule 1006 and yet are more than mere pedagogical devices designed to simplify and clarify other evidence in the case. These secondary-evidence summaries are admitted in evidence not in lieu of the evidence they summarize but *in addition thereto*, because in the judgment of the trial court such summaries so accurately and reliably summarize complex or difficult evidence that is received in the case as to materially assist the jurors in better understanding the evidence. In the *unusual* instance in which this third form of secondary evidence summary is admitted, the jury should be instructed that the summary is not independent evidence of its subject matter, and is only as valid and reliable as the underlying evidence it summarizes. *See United States v. Citron*, 783 F.2d 307, 317 n. 10 (2d Cir.1986).

Since, in this case, it is clear that the summaries at issue are within the first of the three categories we have described, and were admitted under Rule 1006, the district court's refusal to give a limiting instruction in its final instructions to the jury was proper. There was no error, let alone reversible error. To be sure, the district court mistakenly gave a limiting instruction *sua sponte* when it admitted the government's summaries, but this error was one that favored Bray. Obviously, it provides no basis for overturning his convictions.

**e.**

The charts were prepared by Postal Inspector Pollard. He testified about the charts at trial and was subject to cross-examination. There is no claim that the charts were not properly authenticated or introduced.

**C.**

■ Finally, Bray attacks the summaries on the ground that they were misleading because they did not depict the same time period. The charts relating to the defendant and Owczarzak covered approximately a two-year period, while the charts relating to their replacements covered only a four-month period.

The charts met the definition of relevancy provided in Rule 401. As the government points out, exhibits 112 and 113, relating to Bray and Owczarzak, showed sales remaining stable while the stamp inventory rose, which was consistent with the government's embez-

zlement theory. Exhibits 114 and 115, relating to the replacement employees, showed that the replacements sold the same amount of stamps while maintaining a stable stamp inventory.

Bray may mean to suggest that the two different time periods covered by the charts rendered the exhibits misleading and excludable under Rule 403. If so, we disagree. While it is true that the time periods were different, this was clearly delineated in the charts. In the circumstances of this case, the differing time periods were relevant to evidentiary weight, not the threshold question of admissibility.

### III.

For the reasons stated above, the district court did not abuse its discretion in admitting the government's summary exhibits. Accordingly, the judgment of conviction is **AFFIRMED.**