**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Frank STAVROFF, Defendant–Appellant.**

No. 97–3126.

United States Court of Appeals,
Sixth Circuit.

Argued June 15, 1998.

Decided July 20, 1998.

---

**5.** The record reflects that in 1990 claimant won    $10 million in the Ohio Lottery.

R. William Meeks (argued and briefed), John Boyd Binning (briefed), Columbus, Ohio, for Defendant–Appellant.

Daniel Allen Brown (argued and briefed), Office of the U.S. Attorney, Columbus, Ohio, for Plaintiff–Appellee.

Before: KENNEDY, GUY, and NORRIS, Circuit Judges.

## OPINION

RALPH B. GUY, JR., Circuit Judge.

Defendant appeals his convictions for conspiracy to commit tax fraud in violation of 18 U.S.C. § 371 and for filing false individual tax returns in violation of 26 U.S.C. § 7206(1). He contends that the district court (1) deprived him of his right to confront witnesses by limiting cross-examination of a government witness regarding that witness' motivation in testifying; (2) deprived him of his right to an impartial jury by commenting that the witness' motivation had no relation to defendant's guilt or innocence; and (3) erred in admitting certain documents under the hearsay exception for business records. Based upon our review of the record, we conclude that the court erred in limiting cross-examination in the manner it did, but that the error was harmless. Accordingly, we affirm.

### I.

Defendant, Frank Stavroff, was indicted along with two co-defendants, Franz J. Schwarzbach and Robert T. Hetzel, in a ten-count·indictment alleging conspiracy to commit tax fraud and underreporting of income. His co-defendants pleaded guilty to the conspiracy charge and Stavroff was tried before a jury. He was convicted on all relevant charges. One of his co-conspirators, Steven Dosky, who was separately indicted and pleaded guilty to conspiracy, testified on behalf of the government. At trial, evidence was presented that showed that Stavroff, Schwarzbach, Hetzel, and Dosky, were owners of a Columbus, Ohio, nightclub called "Spinners." From 1991 through 1993, these

men methodically skimmed the profits of the club to underreport income. The company formed to own Spinners, 2171, Inc., was a closely-held corporation and profits were directly taxable to the shareholders based on their percentage of ownership. Stavroff owned 20 percent, Dosky owned 13–1/3 percent, and Schwarzbach and Hetzel each owned 33–1/3 percent. The shareholders divided the actual cash profits on a weekly basis but reported a lesser figure to their bookkeepers for tax purposes. The company also failed to report accurately to its bookkeepers the number of its employees and their wages.

The record also showed that Stavroff was one of three equal owners of SES Liquor Company (SES), along with Schwarzbach and another individual, who was unrelated to 2171, Inc. SES operated a nightclub known as the "Gables Lounge." Although not charged as a separate offense under the indictment, the evidence showed that the SES profits were skimmed in the same manner as those of 2171, Inc. This information was withheld from SES's bookkeeper. SES also underreported the size of its staff.

Following his conviction, Stavroff was sentenced to 16 months imprisonment, assessed a $10,000 fine, and was ordered to serve two years of supervised release. This appeal followed.

## II.

### A. Limited Cross–Examination

Stavroff first challenges the district court's limiting of his cross-examination of co-conspirator, Steven Dosky, who testified for the prosecution. At the end of defense counsel's cross-examination of Dosky, counsel raised the issue of Dosky's plea agreement under which Dosky agreed to testify for the government. At the time of trial, Dosky had not yet been sentenced. The exchange proceeded as follows:

Q   Mr. Dosky, by a bill of information you pled guilty to one count of conspiracy in the United States Federal District Court; is that correct?

A That is correct.

Q   And one of the hopes in your entering—

THE COURT: One of the what? What did you say, one of the what?

MR. BINNING: Through the means of a bill of information, your Honor, you entered a plea of guilty to one count of conspiracy.

THE COURT: What was your next question to this witness?

MR. BINNING: After that question, your Honor?

THE COURT: Yes. One of your hopes, is that what you said?

MR. BINNING: No, sir. I hadn't gotten to that question yet.

THE COURT: Go ahead.

MR. BINNING: Thank you, your honor.

Q   By entering the plea, you hoped to lessen any personal exposure—

THE COURT: Do you object to that question?

MR. BROWN [the prosecuting attorney]: No, I can't, your Honor. I can't object to that question.

THE COURT: You what?

MR. BROWN: I'm sorry, I cannot object to that question. I apologize.

THE COURT: Go ahead. Go ahead.

MR. BINNING: Thank you, your honor.

Q   By entering the plea of guilty to the conspiracy count, it was your intention to lessen your exposure regarding any penalty that might be imposed upon you; correct?

THE COURT: Regarding the what?

MR. BINNING: Regarding any penalty that might be imposed upon you.

THE COURT: I won't let you answer that question. Strike that question. Go ahead. His hopes has nothing to do with the guilt or innocence of this defendant. Now go ahead.

MR. BINNING: May I approach the bench, your Honor?

THE COURT: No, you may not.

Q   Why did you enter a plea to one count of conspiracy?

THE COURT: What?

MR. BINNING: Your Honor, I will strike that. May I approach the bench?

THE COURT: No, you may not.

MR. BINNING: May I proffer something on the record?

THE COURT: You may at recess. Whatever you want to do.

MR. BINNING: Thank you, sir.

THE COURT: Are you through with this witness?

MR. BINNING: Yes, your Honor, I have completed my examination.

Later, Stavroff made a proffer related to the excluded cross-examination:

THEREUPON, OUT OF THE HEARING AND PRESENCE OF THE COURT AND JURY, THE FOLLOWING PROFFER WAS MADE: [1]

MR. BINNING: If the Court please, I object to the restriction of the defendant's right to full and fair and complete cross-examination of the witness Steven Dosky in the areas of truthfulness, credibility and also motivation in entering a plea before the Honorable Judge Graham in the United States District Court.

Additionally, in relation to the proffer, if I would have been permitted to continue with the line of questions, I believe that it very definitely had a bearing on this witness' credibility in relation to his accusations regarding my client.

Thank you.

MR. BROWN: If he would have been permitted to ask questions in those areas, I had rehabilitation kinds of evidence I think available, mostly testimony that now I am unable to use. So I mean I am not agreeing with him; it's just that I don't think that would have been all one-sided.

■ The Confrontation Clause of the Sixth Amendment guarantees an accused "the right ... to be confronted with the witnesses against him." The Supreme Court has recognized " 'that the exposure of a witness' motivation in testifying is a proper and im-

portant function of the constitutionally protected right of cross-examination.' " *Delaware v. Van Arsdall*, 475 U.S. 673, 678–79, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986) (quoting *Davis v. Alaska*, 415 U.S. 308, 316–17, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974)). A criminal defendant states a violation of that right "by showing that he was prohibited from engaging in otherwise appropriate cross-examination designed to show a prototypical form of bias on the part of the witness, and thereby 'to expose to the jury the facts from which jurors ... could appropriately draw inferences relating to the reliability of the witness.' " *Van Arsdall*, 475 U.S. at 680, 106 S.Ct. 1431 (quoting *Davis*, 415 U.S. at 318, 94 S.Ct. 1105)

■ The denial of a defendant's opportunity to impeach a witness for bias, however, is subject to a "harmless-error analysis." 475 U.S. at 684, 106 S.Ct. 1431. According to the Court:

The correct inquiry is whether, assuming that the damaging potential of the cross-examination were fully realized, a reviewing court might nonetheless say that the error was harmless beyond a reasonable doubt. Whether such an error is harmless in a particular case depends upon a host of factors, all readily accessible to reviewing courts. These factors include the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case.

*Id.*

■ In this case, Stavroff contends the district court improperly prohibited him from attempting to impeach Dosky for bias. We agree.

■ We first express our disapproval of the court, *sua sponte*, barring the question at issue after the government had refused to object to the question. We see any number of problems with the way in which the court

1. We express our strong disapproval of proffers   being made when the trial judge is not present.

proceeded. Although the trial judge does not have to be a passive bystander, the court should avoid interjecting itself unnecessarily into the questioning of an important witness, particularly in a criminal case. It is not the job of the trial judge to try the case for the government. Here, for example, the government found the question unobjectionable. However, even if the question had been clearly objectionable, the government may have elected for strategic reasons not to object. The trial judge should not assume that every failure to object is the result of a failure to recognize the possible objection that might be made.

From a defendant's standpoint, a court's *sua sponte* exclusion of a question unduly highlights it for the jury and may unfairly cast defense counsel in a bad light. If a trial judge feels he must take some action, a sidebar conference outside the hearing of the jury would be an alternate and preferable way to proceed. In addition, the right of a defendant to cross-examine and confront witnesses in a criminal case is key to a defendant being able to mount a defense. The court should not truncate this right on its own motion unless it is necessary to do so to avoid a serious miscarriage of justice.

█ We also express our disapproval of the manner in which the proffer was handled by the court and defense counsel. The proffer was wholly inadequate in that it only referenced generally that credibility was at issue and did not provide enough information as to specifically what would have been asked and the specific answers anticipated. Even if defense counsel had done this, however, the trial judge would not have heard it since he was not present at the proffer. This is not an appropriate procedure. Although one purpose of a proffer is to protect the appellate record, a proper proffer also gives the court an opportunity to revisit its ruling.

Notwithstanding our criticism of what occurred, we nonetheless conclude that any error was harmless as a matter of law. In particular, the record shows that the jury had before it " 'facts from which bias, prejudice or lack of credibility of a prosecution witness might be inferred.' " *Dorsey v. Parke*, 872 F.2d 163, 167 (6th Cir.1989) (quot-ing *United States v. Garrett*, 542 F.2d 23, 25 (6th Cir.1976)). Dosky's plea agreement was admitted into evidence as a government exhibit during direct examination of Dosky by the prosecution. During that examination, Dosky was asked specific questions relating to the terms of that agreement:

Q In order for you to testify here today, you did something, did you not, relative to the processes of the court?

A Yes.

Q What did you do?

A I pled guilty.

Q To what?

A One count of conspiracy.

Q So you are convicted of a felony crime as you sit here today.

A Yes, I am.

Q You signed a plea agreement.

A Yes, I did.

MR. BROWN: May I approach this witness, your Honor?

THE COURT: Yes.

Q Did you sign only one plea agreement?

A Yes.

Q Is that the one plea agreement you signed? Check the last page.

A Yes, it is.

MR. BROWN: May I have a moment? I should have put an exhibit sticker on it. I will just call this Government's Exhibit 9.

Q Mr. Dosky, other than that plea agreement that you signed—with advice of counsel, I take it; correct?

A Yes, sir.

Q —do you have any other agreement with the United States?

A No, I don't.

THE COURT: You might ask him a question explaining to this jury what a plea agreement is, why it is entered into and what it provides for.

MR. BROWN: Thank you.

Q What did you agree to do in this plea agreement?

A I agreed to—

THE COURT: And who did you agree with?

THE WITNESS: I agreed with the United States to—

THE COURT: You mean the United States Attorney?

THE WITNESS: United States Attorney to offer my testimony truthfully and to explain my actions as it related to this investigation.

Q According to the plea agreement, does it say anything about what is going to happen to you if you don't tell the truth?

A Yes. I believe it states that the plea agreement will be null and void.

Q Doesn't it also say that you will be charged with perjury or making a false statement?

A I believe that it does, yes.

Q But otherwise, I think its [penultimate] paragraph of that document, second to last paragraph of that document, I think it indicates that if you provide truthful testimony, we will inform the Court of that; correct?

A Yes, it does.

Q So you haven't been sentenced yet.

A No, I have not.

Q You are going to appear before a judge in this building to be sentenced at some future time; correct?

A Yes, I will.

Q And you expect that we will report—this office, the United States Attorney's Office, will report to the Court about what it is you have done and what you haven't done to faithfully observe this plea agreement, which is Government's Exhibit 9, prior to sentencing; correct?

Defendant insists that harmless error has not been shown under the "five *Van Arsdall* factors." He argues that the error was not harmless because Dosky was an important witness, his testimony was not cumulative, certain aspects of the testimony were not corroborated, no cross-examination was permitted on his motivation in testifying, and the prosecution's case, without Dosky, was weak.

Defendant's argument is unavailing. The factors listed in *Van Arsdall* were not exclusive. Rather, the Court recognized that a harmless-error analysis "in a particular case depends upon a host of factors, all readily accessible to reviewing courts." 475 U.S. at 684, 106 S.Ct. 1431. Therefore, we conclude that the presence of facts in the record sufficient to permit a reasonable juror to infer bias on the part of Dosky rendered any error by the district court in limiting impeachment for bias harmless beyond a reasonable doubt.[2]

Finally, we note that defense counsel had any number of ways available to further pursue the question ruled objectionable. It is more probable than not that the trial judge was voicing an objection only as to the *form* of the question. There is nothing from which even an inference can be drawn to suggest the trial judge was prohibiting defense counsel from exploring the general area of this witness' credibility and possible bias.

## B. Judicial Commentary

■ In his second issue on appeal, Stavroff challenges the district court's comment that Dosky's motivation for testifying did not relate to defendant's "guilt or innocence." That comment, he claims, deprived him of his Sixth Amendment right to an impartial jury by "confirm[ing] the witness' credibility, thus encroaching upon the jury's province to determine truthfulness."

■ We disagree with defendant's characterization of what occurred. At most, the trial judge, *sua sponte*, ruled in front of the jury that as a matter of law the defense's line of questioning was irrelevant. He in no way gave any indication as to his opinion of Dosky's credibility. To the extent the court's comment could be inferred by the jury as an instruction to disregard any improper motivation by Dosky, we review whether, considering the charge to the jury as a whole, the court fairly and accurately submitted the issues and the applicable law to the jury. *Miller v. Taylor*, 877 F.2d 469, 471 (6th Cir.

2. We also note that Dosky's testimony, while essential to the conspiracy charge, was not necessary for the underreported income charges.

Stavroff received concurrent, identical sentences on all of these charges.

1989). An erroneous or ambiguous statement will not be cause for reversal unless it is likely that this improper statement, in the context of the entire charge, misled the jury. *Hurt v. Coyne Cylinder Co.,* 956 F.2d 1319, 1324 (6th Cir.1992).

■ A review of the court's instructions in their entirety shows that notwithstanding the court's comments, the jury was not misled. In instructing the jury at the conclusion of the evidence, the court expressly referenced the exhibits that had been admitted into evidence, which included Dosky's plea agreement, as relevant for consideration in reaching a verdict. The court alluded to the instructions to the jury pertaining to the "credibility of witnesses," including "impeachment." The district judge elaborated on the instruction pertaining to witnesses who have pleaded guilty, stating:

> You have heard testimony from Steve Dosky. This witness pleaded guilty to crimes arising out of the same occurrence for which the defendant is now on trial. *You may consider evidence of a witness's guilty plea as it relates to the credibility of that witness.* You may not, however, consider the guilty plea of any person as evidence of guilt on the part of the defendant in this case.

(Emphasis added). The court specifically addressed the potential bias inherent in Dosky's plea agreement:

> You have also heard that the government has promised Mr. Dosky that it would inform his sentencing court of his cooperation in this case.

> It is permissible for the government to make such a promise, but you should consider Mr. Dosky's testimony with more caution than the testimony of other witnesses. Consider whether his testimony may have been influenced by the government's promise.

## C. Business Records

Lastly, Stavroff takes issue with the district court's admission under the hearsay exception for business records, Fed.R.Evid. 803(6), of the 1992 and 1993 financial ledgers

for the Gables Lounge. Rule 803(6) provides as follows:

> **Records of regularly conducted activity.** A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness. The term "business" as used in this paragraph includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit.

This circuit has held that a document is admissible under the rule if it satisfies the following four requirements:

> (1) it must have been kept in ... a regularly conducted business activity; (2) it must have been kept in the regular course of that business; (3) the regular practice of that business must have been to have made the memorandum; and (4) the memorandum must have been made by a person with knowledge of the transaction or from information transmitted by a person with knowledge.

*Bondie v. Bic Corp.,* 947 F.2d 1531, 1534 (6th Cir.1991).

■ Defendant argues that the rule does not apply, however, because the source of the information contained in these ledgers and the method or circumstances of preparation lack trustworthiness. The record does not identify the author of each of the entries contained in the ledgers. Defendant further refers to the testimony by one of the declarants, David Van Meter, that he "was not accountable" for his entries.

■ Neither of these charges has merit. A declarant does not have to be the source of the information recorded in business records. *Bondie,* 947 F.2d at 1534. Rather, the witness' lack of personal knowledge goes to the

credibility that should be accorded that witness' testimony. *United States v. Sachs,* 801 F.2d 839, 843 (6th Cir.1986). The Gables Lounge ledgers were introduced into evidence through the custodians of those records, the club's managers. The information contained in the ledgers recorded the cash register receipts at the end of each work shift. A substantial number of the entries had been recorded by the managers themselves from the cash register's ticket tapes. Nor is there any evidence that these figures were not accurately recorded. Notwithstanding Van Meter's comments regarding accountability, on further questioning by the judge, he admitted that his entries "matched the cash register receipts." Indeed, it was the manager's job to see that the receipts were entered into the ledgers. Under these circumstances, we conclude a proper foundation was established for the admissibility of the ledgers. The jury remained free to assign whatever weight it found appropriate to the evidence. Moreover, we note that these ledgers were not the ledgers underlying defendant's charge of conspiracy to commit tax fraud. Those ledgers, which defendant does not challenge, related to the Spinners nightclub and were introduced into evidence through Dosky.

**AFFIRMED.**