**In re SOL BERGMAN ESTATE JEWELERS, INC., Debtor.**

**Marvin A. SICHERMAN, Plaintiff–Appellee,**

v.

**DIAMONCUT, INC., Defendant–Appellant.**

**BAP No. 98–8028.**

United States Bankruptcy Appellate Panel of the Sixth Circuit.

Argued Sept. 2, 1998.

Decided Nov. 2, 1998.

898

ARGUED: Michael D. Slodov, Javitch, Block, Eisen & Rathbone, Cleveland, OH, for Appellant.

ARGUED: Robert D. Barr, Dettelbach, Sicherman & Baumgart, Cleveland, OH, for Appellee.

ON BRIEF: Michael D. Slodov, Kenneth B. Baker, Saul Eisen, Javitch, Block, Eisen & Rathbone, Cleveland, OH, for Appellant.

ON BRIEF: Robert D. Barr, Marvin A. Sicherman, Dettelbach, Sicherman & Baumgart, Cleveland, OH, for Appellee.

Before RHODES, STOSBERG, and WALDRON, Bankruptcy Appellate Panel Judges.

## OPINION

In determining the amount of a preferential transfer, the bankruptcy court admitted the testimony of a former employee of the Debtor and secondary evidence of the Debtor's lost business records over the creditor's objections. The bankruptcy court properly applied Federal Rules of Evidence 1006 and 1004(1). Accordingly, the decision of the bankruptcy court is **AFFIRMED.**

## I. ISSUES ON APPEAL

This appeal presents two issues: (1) whether the bankruptcy court abused its discretion by admitting secondary evidence of business records which had been lost or destroyed prior to trial; and (2) whether the bankruptcy court's determination that the value of admittedly preferential transfers was $53,825.75 is clearly erroneous.

## II. JURISDICTION AND STANDARD OF REVIEW

The Panel has jurisdiction to hear the appeals of final orders of the bankruptcy court pursuant to 28 U.S.C. § 158(a)(1) and (c)(1). A bankruptcy court's order determining whether a transfer made by a debtor can or cannot be avoided as a preference under § 547(b) is a final appealable order. *Marlow v. Rollins Cotton Co. (In re Julien Co.)*, 146 F.3d 420, 422 (6th Cir.1998); *Luper v. Columbia Gas of Ohio, Inc. (In re Carled, Inc.)*, 91 F.3d 811, 812 (6th Cir.1996).

The bankruptcy court's decision to admit or exclude evidence or testimony is reviewed for an abuse of discretion. *General Electric Co. v. Joiner*, 522 U.S. 136, 118 S.Ct. 512, 517, 139 L.Ed.2d 508 (1997); *United States v. Gaitan–Acevedo*, 148 F.3d 577, 588 (6th Cir.), *cert. denied,* — U.S. —, 119 S.Ct. 256, — L.Ed.2d — (1998). The bankruptcy court's " 'rulings on evidentiary matters will only be reversed on a *clear showing* of abuse of discretion.' " *Phillips Petroleum Co. v. Stokes Oil Co., Inc.,* 863 F.2d 1250, 1257 (6th Cir.1988) (citation omitted, emphasis ours). "An abuse of discretion occurs only when the [bankruptcy] court 'relies upon clearly erroneous findings of fact or when it improperly applies the law or uses an erroneous legal standard.' " *Mapother & Mapother, P.S.C. v. Cooper (In re Downs)*, 103 F.3d 472, 480–481 (6th Cir.1996) (citations omitted).

The bankruptcy court's determination that the value of admittedly preferential merchandise returns is $53,825.75 constitutes a finding of fact. *See, e.g., Marlow v. Rollins Cotton Co. (In re Julien Co.)*, 146 F.3d 420, 422 (6th Cir.1998); *Luper v. Columbia Gas of Ohio, Inc. (In re Carled, Inc.)*, 91 F.3d 811, 812 (6th Cir.1996); *Logan v. Basic Distribution Corp. (In re Fred Hawes Org., Inc.)*, 957 F.2d 239 (6th Cir.1992). Findings of fact are reviewed under the clearly erroneous standard. FED. R. BANKR.P. 7052; *Carled*, 91 F.3d at 813. "A finding of fact is 'clearly erroneous' when, although there is evidence to support it, the reviewing court is left with the definite and firm conviction that a mistake has been committed." *Carled*, 91 F.3d at 813.

## III. FACTS

Sol Bergman Estate Jewelers, Inc. ("the Debtor") operated three retail jewelry stores, each of which filed a Chapter 7 petition on February 7, 1996. The individual cases were consolidated on March 21, 1996.

Within 90 days preceding the Debtor's Chapter 7 petitions, the Debtor returned merchandise and made payments to Diamoncut, Inc., a supplier who periodically sold and consigned inventory to the Debtor. The Chapter 7 Trustee instituted an adversary proceeding to avoid allegedly preferential transfers made by the Debtor to Diamoncut, including a series of merchandise returns. Diamoncut did not dispute that the merchandise returns made by the Debtor constituted an avoidable preference; however, the parties disagreed over the amount of merchandise returned to Diamoncut. The Trustee asserts that the Debtor returned merchandise totaling $53,825.75, while Diamoncut argues that the Debtor returned only $11,446.00 worth of merchandise.

At trial, the Trustee offered testimony and Trustee's Exhibits U, V, X, and Y as proof of the value of the returned merchandise. Trustee's Exhibit U is a single-page handwritten ledger sheet which contains an entry indicating that $53,825.75 worth of merchandise had been returned to Diamoncut as of January 31, 1996. Trustee's Exhibit V is a fourteen-page computer printout characterized as an inventory record and upon which several hand-markings have been added, including line-outs, highlighting, check marks, underlines, question marks, and brief notations. Trustee's Exhibit X is a photocopy of adding machine tapes which have been hand-marked in several places with notations indicating the calculations pertain to merchandise returned to Diamoncut. Trustee's Ex-

hibit Y is a single-page computer printout characterized as an inventory report indicating a total of $53,825.75 in merchandise had been returned to Diamoncut through January 1996.

The Trustee's exhibits were admitted through the testimony of Susan Cahen. Mrs. Cahen testified that she was employed by the Debtor for twelve years prior to bankruptcy, held a master's degree and had received graduate level business training, and that her husband was an equity partner in the business. In the course of her employment in the Debtor's business, Mrs. Cahen handled bookkeeping, reconciled bank statements, wrote checks, compiled information for use in the Debtor's interim and annual financial statements, and was responsible for performing and supervising inventory and account record maintenance.

Mrs. Cahen testified that the Debtor returned a total of $53,825.75 in merchandise to Diamoncut as indicated by Trustee's Exhibits U, V, X, and Y. Mrs. Cahen stated that the primary source documents relied upon to compile and/or verify Trustee's Exhibits U, V, X, and Y were "inventory cards" used by the Debtor. She explained that as items had been returned to vendors such as Diamoncut, the inventory cards for the returned merchandise would be pulled, a ticket would be fastened to the back of the card, and an adding machine tape representing the cost and book value of the item would be wrapped around the card. Mrs. Cahen also relied upon computerized inventory records reflecting the disposition of merchandise. Mrs. Cahen further explained that the assistant responsible for data entry did not complete the computerized records before leaving her employment with the Debtor, thus making it necessary for Mrs. Cahen to rely upon a combination of the inventory cards and computer records in order to compile an accurate accounting of which merchandise had been returned. These original inventory cards and computer records were lost or destroyed in the course of a postpetition auction of the Debtor's personal property.

The bankruptcy court, overruling Diamoncut's objections, admitted the testimony of Mrs. Cahen and also admitted Trustee's Ex-

hibits U, V, X, and Y as secondary evidence of the contents of the Debtor's lost business records. The court also admitted evidence presented by Diamoncut, including the testimony of David Gottfried, president of Diamoncut. Mr. Gottfried testified that the Debtor had returned, at most, approximately $11,000.00 worth of merchandise.

Relying upon Mrs. Cahen's testimony and the Trustee's exhibits, the bankruptcy court determined that the Debtor had returned a total of $53,825.75 in merchandise to Diamoncut within the 90 days preceding the filing of the Chapter 7 petitions, and the Trustee was entitled to recover this amount from Diamoncut pursuant to 11 U.S.C. § 547(b). Diamoncut timely appealed.

## IV. DISCUSSION

Diamoncut argues on appeal that the bankruptcy court abused its discretion in admitting the testimony of Mrs. Cahen and admitting Trustee's Exhibits U, V, X, and Y. Diamoncut asserts that the bankruptcy court's determination that the value of the returned merchandise was $53,825.75 is clearly erroneous because this finding was based on improperly admitted evidence.

### A. Admissibility of Evidence.

Trustee's Exhibits U, V, X, and Y are documents purporting to establish the value of the returned merchandise as $53,825.75. These exhibits result from the Debtor's inventory cards and computer records, which were unavailable at the time of trial. Both the exhibits and the underlying business records of the Debtor constitute statements, other than ones made by a declarant while testifying at trial, offered into evidence to prove the truth of the matters asserted. Fed. R. Evid. 801(a)-(c). Accordingly, the exhibits and underlying business records are hearsay and may not be admitted into evidence unless they qualify under an exception to the hearsay rule. Fed. R. Evid. 802.

### 1. Competency of Mrs. Cahen's Testimony and Authentication.

Diamoncut argues that Trustee's Exhibits U, V, X, and Y were never properly authenticated by a witness with personal knowledge

pursuant to Federal Rule of Evidence 901. Diamoncut bases this argument on the fact that Mrs. Cahen, as the Trustee's primary witness, neither created the inventory cards and computer records, nor did she personally observe the actual shipping of each piece of returned merchandise when the Debtor sent items back to Diamoncut. Therefore, Diamoncut argues Mrs. Cahen was not competent to testify as to the authenticity and accuracy of the inventory cards, computer records, and Trustee's exhibits within the meaning of Rules 601 and 602.

■ The foundation for admissibility obtained from an authenticating witness proffering a business record, a summary based thereon, or secondary evidence thereto, does not require the witness to have personal knowledge of the actual events reflected in the business record. *United States v. Weinstock,* 153 F.3d 272, 276 (6th Cir.1998) (citation omitted). The witness "need only be familiar with the company's recordkeeping practices." *Id.* If the witness lacks personal knowledge of the recorded events, this is considered by the trier of fact only in determining the credibility of the witness and the weight to be accorded her testimony and the exhibits admitted into evidence through her testimony. *United States v. Stavroff,* 149 F.3d 478, 484–485 (6th Cir.1998) (citation omitted).

■ Although Mrs. Cahen admitted that she did not have personal knowledge of every single item returned to Diamoncut during the 90 days preceding the Chapter 7 filings, nor of each inventory card or computer record, her testimony established that she was thoroughly familiar with and supervised the Debtor's inventory accounting practices. Therefore, her testimony was competent to provide the requisite foundation for admissibility of Trustee's Exhibits U, V, X, and Y, and the bankruptcy court was free to consider her lack of knowledge of individual transactions in determining the weight it would accord her testimony and the Trustee's exhibits.

**2. Admissibility of the Original Inventory Cards and Computer Records.**

■ Because Trustee's Exhibits U, V, X, and Y derive from the Debtor's inventory cards and computer records, a predicate determination necessary to qualify the exhibits for admission is whether the underlying inventory cards and computer records are themselves admissible under an exception to the hearsay rule. Federal Rule of Evidence 803(6) provides an exception for records of regularly conducted business activity, commonly referred to as the "business record" rule:

[A] business record must satisfy the following four requirements in order to be admissible under Rule 803(6):

(1) it must have been made in the course of a regularly conducted business activity; (2) it must have been kept in the regular course of that business; (3) the regular practice of that business must have been to have made the memorandum; and (4) the memorandum must have been made by a person with knowledge of the transaction or from information transmitted by a person with knowledge.

*Weinstock,* 153 F.3d at 276 (citation omitted).

■ Mrs. Cahen testified in detail concerning the Debtor's inventory accounting practices. Her testimony established that it was the regular course of the Debtor's business for the person handling the return of merchandise to record the disposition of that merchandise on the inventory cards maintained for that purpose. The inventory cards were then used to create the computerized inventory records by a person under Mrs. Cahen's supervision who regularly input the data into the Debtor's computers. Accordingly, the admission of the original inventory cards and computer records would not have been barred by the hearsay rule and would have been admissible as business records of the Debtor if the original cards and electronic data could have been produced at trial.

**3. Admissibility of Trustee's Exhibits U, V, X, and Y Where the Original Inventory Cards and Computer Records Were Unavailable.**

■ Merely establishing the admissibility of the original data from which Trustee's

Exhibits U, V, X, and Y were derived is insufficient to establish the admissibility of the

exhibits themselves. The "best evidence" rule ordinarily requires the proponent of documentary evidence to produce the original of such evidence for the court: "To prove the content of a writing, recording, or photograph, the original writing, recording, or photograph is required[.]" FED.R.EVID. 1002. Although the Trustee was unable to produce the original inventory cards and computer records, the bankruptcy court admitted the Trustee's exhibits into evidence based upon the interplay between two exceptions to the best evidence rule—Rule 1006, which permits the introduction of summaries of voluminous evidence, and Rule 1004, which allows the use of secondary evidence where the original evidence has been lost or destroyed. These Rules provide:

### Rule 1006. Summaries.

The contents of voluminous writings, recordings, or photographs which cannot conveniently be examined in court may be presented in the form of a chart, summary, or calculation. The originals, or duplicates, shall be made available for examination or copying, or both, by other parties at reasonable time and place. The court may order that they be produced in court.

### Rule 1004. Admissibility of Other Evidence of Contents.

The original is not required, and other evidence of the contents of a writing, recording, or photograph is admissible if—

**(1) Originals lost or destroyed.** All originals are lost or have been destroyed, unless the proponent lost or destroyed them in bad faith[.]

FED.R.EVID. 1006; FED.R.EVID. 1004(1).

The unavailability of the lost inventory cards and computer records left the Trustee unable to comply with Rule 1006's requirement that the evidence underlying a summary be made available to other parties. Rule 1004, however, allows the proponent to introduce secondary evidence where original evidence is unavailable, unless the unavailability is the result of the proponent's bad faith. FED. R. EVID. 1004(1); *Voduwek v.*

*Bayliner Marine Corp.*, 71 F.3d 148, 156 (4th Cir.1995) ("When a proponent cannot produce original evidence of a fact because of loss or destruction of evidence, the court may permit proof by secondary evidence."); *Neier v. United States,* 127 B.R. 669, 674–675 (D.Kan.1991). "Once the terms of Rule 1004 are satisfied, the party seeking to prove the contents of the [original evidence] may do so by any kind of secondary evidence." *United States v. Ross,* 33 F.3d 1507, 1513 (11th Cir.1994) (citation omitted), *cert. denied,* 515 U.S. 1132, 115 S.Ct. 2558, 132 L.Ed.2d 812 (1995). *See also Maxwell Macmillan Realization Liquidating Trust v. Aboff (In re Macmillan, Inc.),* 186 B.R. 35, 47 (Bankr. S.D.N.Y.1995) ("Rule 1004 recognizes no degrees of secondary evidence."). " '[T]he opponent ... may attack the sufficiency of the secondary evidence including the credibility of the witness. This attack, however, goes not to the admissibility but to the weight of the evidence and is a matter for the trier of fact to decide.' " *Remington Arms Co. v. Liberty Mut. Ins. Co.,* 810 F.Supp. 1420, 1422–23 (D.Del.1992) (citation omitted). *See also* FED. R. EVID. 1008 ("[W]hen an issue is raised ... whether other evidence of contents correctly reflects the contents, the issue is for the trier of fact to determine as in the case of other issues of fact."); *United States v. Matta–Ballesteros,* No. 91–50165, 1995 WL 746007, at *4 (9th Cir. Dec. 15, 1995) ("Secondary evidence used in place of original evidence need meet no threshold standard of quality or reliability; those questions go to weight, not admissibility."), *cert. denied,* —— U.S. ——, 117 S.Ct. 965, 136 L.Ed.2d 850 (1997).

To establish the admissibility of evidence pursuant to Rule 1004(1), the court must determine whether the original evidence was lost or destroyed and whether the proponent of the secondary evidence has acted in bad faith. FED. R. EVID. 1004(1); *Cross v. United States,* No. 96–3243, 1998 WL 255054, at *4 (10th Cir. May 19, 1998) (citations omitted). The mere negligent destruction of original evidence is insufficient to establish bad faith on the part of the proponent. *Cross,* 1998 WL 255054, at *5 (citation omitted). "[T]he party against whom the secondary evidence is being offered bears the

burden of challenging its admissibility." *Ross,* 33 F.3d at 1513 (citation omitted).

■ Diamoncut does not dispute that the inventory cards and computer records were irretrievably lost in the course of the administration of the estate, nor does Diamoncut assert that the loss of the original evidence is the result of the Trustee's bad faith. Accordingly, Trustee's Exhibits U, V, X, and Y are admissible pursuant to Federal Rule of Evidence 1004(1) as secondary evidence of the contents of the lost inventory cards and computer records. *Americhem Corp. v. St. Paul Fire and Marine Ins. Co.,* 942 F.Supp. 1143, 1145 (W.D.Mich.1995).

This result is supported by the Sixth Circuit's recent decision in *United States v. Bray,* 139 F.3d 1104 (6th Cir.1998). The Circuit explained there are three kinds of summary evidence: (1) primary-evidence summaries; (2) pedagogical-device summaries; and (3) secondary-evidence summaries. *Bray,* 139 F.3d at 1112. Primary-evidence summaries are those contemplated by Rule 1006 which summarize the contents of voluminous writings, recordings, or photographs which cannot conveniently be examined in court. *Id.* This type of summary is admitted in lieu of the original evidence, so "the summary, and not the underlying documents, is the evidence to be considered by the factfinder." *Id.* Pedagogical-device summaries are illustrative tools such as chalkboard drawings, graphs, calculations, or data compilations which are used only as an aid to the presentation and understanding of the evidence. *Id.* Pedagogical-device summaries are not themselves admitted into evidence and may be used by the factfinder only to clarify the evidence which has been admitted. *Id.*

Secondary-evidence summaries are a combination of primary-evidence and pedagogical-device summaries. These summaries "are not prepared entirely in compliance with Rule 1006 and yet are more than mere pedagogical devices designed to simplify and clarify other evidence in the case." *Id.* "[S]econdary-evidence summaries are admitted in evidence not in lieu of the evidence they summarize but in addition thereto, because in the judgment of the trial court such summar-ies so accurately and reliably summarize complex or difficult evidence that is received in the case as to materially assist the [factfinder] in better understanding the evidence." *Id.* A secondary-evidence summary "is not independent evidence of its subject matter, and is only as valid and reliable as the underlying evidence it summarizes." *Id.*

Trustee's Exhibits U, V, X, and Y are closely akin to secondary-evidence summaries as discussed in *Bray* because these exhibits do not comply with Rule 1006 and yet are more than mere pedagogical devices; however, in *Bray* the original evidence was available, but counsel chose not to present original evidence and instead presented only summaries. In this case, the original evidence no longer exists; however, other applicable evidence rules address such circumstances. While a secondary-evidence summary cannot be admitted in lieu of the original evidence under *Bray,* Rule 1004(1) excuses this requirement where the original evidence is unavailable. Rule 1004(1) further permits the secondary-evidence summary to be relied upon as "independent evidence of its subject matter" because of the unavailability of the original evidence. FED. R. EVID. 1004(1); *Bray,* 139 F.3d at 1112. *See also United States v. Hathaway,* 798 F.2d 902, 907 (6th Cir.1986) (holding that where records are incomplete or missing, "[o]nce a foundation is laid, in the absence of specific and credible evidence of untrustworthiness, the proper approach is to admit the evidence and permit the jury to determine the weight to be given the records."); *White Indus., Inc. v. Cessna Aircraft Co.,* 611 F.Supp. 1049 (W.D.Mo.1985) ("[I]f the underlying materials are unavailable (as by loss or destruction), the requirements of Rule 1006 itself cannot be met.... [H]owever, the summary can still be admitted as 'secondary evidence' of the underlying materials if the requirements of Rule 1004 ... are satisfied.").

■ The Panel further notes Trustee's Exhibit U—a hand-written ledger sheet stating $53,825.75 worth of merchandise had been returned to Diamoncut—was also admitted as a recorded recollection of Mrs.

Cahen pursuant to Federal Rule of Evidence 803(5). Diamoncut has not contested this determination on appeal, thus waiving its right to do so. *Kocsis v. Multi–Care Management, Inc.,* 97 F.3d 876, 881 (6th Cir.1996) (citation omitted).

In admitting the testimony of Mrs. Cahen and Trustee's Exhibits U, V, X, and Y, the bankruptcy court did not rely upon clearly erroneous findings of fact, improperly apply the law, or use an erroneous legal standard. *See Downs,* 103 F.3d at 480–481. Trustee's Exhibits U, V, X, and Y were properly admitted by the bankruptcy court as secondary evidence of the contents of the lost inventory cards and computer records, and Diamoncut has waived its right to contest the admission of Trustee's Exhibit U on the alternative basis of qualifying as a recorded recollection of Mrs. Cahen. Accordingly, the Panel finds no abuse of discretion.

**B. Value of the Merchandise Returned.**

Diamoncut argues that the bankruptcy court's finding that the value of the returned merchandise was $53,825.75 is clearly erroneous. The evidence before the bankruptcy court consisted of Trustee's Exhibits U, V, X, and Y and the testimony of Mrs. Cahen. The bankruptcy court also heard the competing testimony of Mr. Gottfried, who stated that the value of the returned merchandise was approximately $11,000.00.

The record before the bankruptcy court contains evidence in support of either position. However, the bankruptcy court determined that the testimony and exhibits offered by the Trustee were more credible than the testimony and exhibits offered by Diamoncut.

The clearly erroneous standard requires this court to give deference to the finder of fact. As the Supreme Court explained:

> If the district court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Where there are two permissible views of the evidence,

the factfinder's choice between them cannot be clearly erroneous.

> Such deference to the trial court is necessary because the trial judge is in the best position to determine credibility of witnesses.

*Thurman v. Yellow Freight Systems, Inc.,* 90 F.3d 1160, 1165–66 (6th Cir.) (quoting and citing *Anderson v. City of Bessemer,* 470 U.S. 564, 573–575, 105 S.Ct. 1504, 1511–12, 84 L.Ed.2d 518 (1985)), *amended on denial of reh'g,* 97 F.3d 833 (6th Cir.1996).

 The record supports the bankruptcy court's determination that the value of the returned merchandise amounted to $53,-825.75, not the $11,446.00 urged by Diamoncut.

**V.  CONCLUSION**

The order of the bankruptcy court determining that the merchandise returns are avoidable by the Trustee in the amount of $53,825.75 is **AFFIRMED.**