RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 18a0025p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

No. 17-3087

TALMAN HARRIS,

*Defendant-Appellant.*

───────────────

Appeal from the United States District Court
for the Northern District of Ohio at Cleveland.
No. 1:15-cr-00335-2—Benita Y. Pearson, District Judge.

Argued: December 7, 2017

Decided and Filed: February 5, 2018

Before: SILER, WHITE, and THAPAR, Circuit Judges.

───────────────

## COUNSEL

───────────────

**ARGUED:** Philip S. Kushner, KUSHNER, HAMED & GROSTIC, CO., LPA, Cleveland, Ohio, for Appellant. Daniel R. Ranke, UNITED STATES ATTORNEY'S OFFICE, Cleveland, Ohio, for Appellee. **ON BRIEF:** Philip S. Kushner, Christian J. Grostic, KUSHNER, HAMED & GROSTIC, CO., LPA, Cleveland, Ohio, for Appellant. Daniel R. Ranke, UNITED STATES ATTORNEY'S OFFICE, Cleveland, Ohio, for Appellee.

───────────────

## OPINION

───────────────

SILER, Circuit Judge. Talman Harris appeals his criminal convictions and sentences, arguing that the district court erred by: (1) barring Harris from impeaching a government

witness; (2) admitting government summary evidence; (3) giving an inaccurate jury instruction with regard to a stockbroker's fiduciary duties; and (4) failing to investigate potential extraneous influence on a juror.

Because the district court abused its discretion by not allowing Harris to introduce a prior inconsistent statement for impeachment purposes, we reverse Harris's conviction for obstruction of justice and remand for a new trial on that count. The district court did not, however, err in admitting the summary exhibits and in rendering the fiduciary-duty jury instruction, so we affirm the district court's rulings on Harris's second and third assignments of error. Finally, because Harris presented a colorable claim of extraneous influence on a juror, we conclude that the district court abused its discretion by failing to hold an evidentiary hearing pursuant to *Remmer v. United States*, 347 U.S. 227 (1954), or by denying defense counsel's request to question the juror and his friend. Thus, we vacate the judgment of the district court and remand for a *Remmer* hearing.

## FACTUAL AND PROCEDURAL BACKGROUND

In September 2016, a jury convicted Harris of one count of conspiracy to commit securities fraud or wire fraud, in violation of 18 U.S.C. §§ 1343, 1348, 1349, one count of obstruction of justice, in violation of 18 U.S.C. § 1503, and three counts of wire fraud, in violation of 18 U.S.C. § 1343. The district court sentenced Harris to 63 months' imprisonment, a five-year term of supervised release, a $500 special assessment, and $843,423.91 in restitution.

Harris was a registered stockbroker with various securities firms in New York from 2007 to 2014. He and his co-conspirators, including government witness Guy Durand, participated in a scheme whereby they agreed to recommend shares of Zirk de Maison's companies to clients in exchange for undisclosed commissions.[1] The Financial Industry Regulatory Authority ("FINRA") began an investigation of the conspirators' activities and questioned Harris and Durand on wire transfers from certain organizations controlled by de Maison. Harris and Durand decided to tell investigators that the deposits resulted from selling expensive watches, and they

---

[1]Zirk de Maison, also known as Zirk Engelbrecht, was Harris's co-conspirator who testified for the government.

sent letters to FINRA summarizing this fictitious explanation.  FINRA responded with a letter asking, "Did an individual by the name of Zirk Engelbrecht have any connection whatsoever with any of the above-noted wire transfers that you received?"  Harris and Durand replied that they did not deal with Zirk Engelbrecht.  After Harris was arrested, he purportedly called and texted Durand on multiple occasions, instructing him to stick with their story: "Remember, we sold watches."  Durand later admitted to officers that the watch story was entirely false.

## DISCUSSION

### I.      Impeachment of Government Witness

Harris first challenges his obstruction of justice conviction based on the district court's denial of his request to impeach Durand with a prior inconsistent statement.

The government presented co-conspirator Durand as a witness against Harris at trial in support of the obstruction of justice charge.  Durand testified that he viewed Harris's statement, "Remember, we sold watches," as an "invit[ation]" to make a false statement to the FBI. Harris's counsel then attempted to impeach Durand with a recorded statement that Durand made to Harris's private investigator, Ron Dwyer.  Harris's counsel posited that Dwyer asked Durand, "Was Talman basically saying if anybody comes around, just tell the truth and leave it at that?" Durand responded, "It was more of that nature, you know."  Durand told Harris's counsel that he did not recall making this statement, and Harris's counsel then requested to play Durand's recorded statement on counsel's cell phone.  The district court denied Harris's request to impeach, finding that the recording was unauthenticated extrinsic evidence that counsel was attempting to use as character evidence.

Harris now contends that the district court improperly analyzed his proffered evidence under Federal Rule of Evidence 608(b), when he sought to introduce the evidence to contradict the witness's testimony, not to attack the witness's character for truthfulness.  We review the district court's ruling for abuse of discretion, "which occurs when the court 'relies on clearly erroneous findings of fact, improperly applies the law, or employs an erroneous legal standard.'" *Griffin v. Finkbeiner*, 689 F.3d 584, 592 (6th Cir. 2012) (quoting *Barner v. Pilkington N. Am., Inc.*, 399 F.3d 745, 748 (6th Cir. 2005)).

Rule 608(b) states that "extrinsic evidence is not admissible to prove specific instances of a witness's conduct in order to attack or support the witness's character for truthfulness." "By limiting the application of the Rule to proof of a witness' character for truthfulness," however, "the amendment leaves the admissibility of extrinsic evidence offered for other grounds of impeachment (such as contradiction, prior inconsistent statement, bias and mental capacity) to Rules 402 and 403." Fed. R. Evid. 608 (application note).

Rule 613(b) provides that an impeaching party may produce "[e]xtrinsic evidence of a witness's prior inconsistent statement . . . if the witness is given an opportunity to explain or deny the statement and an adverse party is given an opportunity to examine the witness about it, or if justice so requires." It applies when two statements, "one made at trial and one made previously, are irreconcilably at odds." *United States v. Fonville*, 422 F. App'x 473, 481 (6th Cir. 2011) (quoting *United States v. Winchenbach*, 197 F.3d 548, 558 (1st Cir. 1999)). "[I]nconsistency is defined broadly." *United States v. LaVictor*, 848 F.3d 428, 451 (6th Cir. 2017).

Here, counsel sought to impeach Durand with a prior inconsistent statement that was "irreconcilably at odds" with his testimony. *Winchenbach*, 197 F.3d at 558. Durand testified at trial that Harris asked him to be dishonest with law enforcement. In the recorded statement that Harris's counsel proffered and attempted to use for impeachment, Durand essentially told Dwyer that Harris had instructed him to "tell the truth and leave it at that." Harris did not, as the district court found, seek to introduce character evidence.

Consequently, the district court abused its discretion by determining that Rule 608 applied and by not allowing Harris to present the prior inconsistent statement pursuant to Rule 613. Harris's counsel met the requirements of Rule 901(a) by informing the district court of the substance of the evidence, *see United States v. Wilson*, 630 F. App'x 422, 428 (6th Cir. 2015), and the issue of whether Harris instructed Durand to lie to law enforcement was clearly a non-collateral issue, *see United States v. Markarian*, 967 F.2d 1098, 1102 (6th Cir. 1992). Pursuant to Rule 613(b), the district court should have afforded Harris the opportunity to produce his proffered evidence.

The government argues that "any error would be harmless in light of the overwhelming evidence against Harris." Evidence against Harris on this specific charge does not appear to have been substantial, however. Durand was the only government witness on the obstruction of justice charge, and his testimony was largely uncorroborated. Notably, the government did not introduce the actual text messages Harris purportedly sent to Durand to corroborate Durand's testimony because Durand had apparently deleted them from his phone.

We cannot say "with fair assurance" that the judgment on Harris's obstruction charge "was not substantially swayed by the error." *United States v. Haywood*, 280 F.3d 715, 724 (6th Cir. 2002) (quoting *Kotteakos v. United States*, 328 U.S. 750, 765 (1946)). Consequently, the district court's failure to allow introduction of Durand's prior inconsistent statement was not harmless error. We reverse Harris's conviction for obstruction of justice and remand for a new trial on this count.

## II.    Summary Exhibits

Next, Harris appeals the district court's admission of certain summary exhibits presented by the government.

Prior to trial, Harris filed a motion *in limine* to preclude the government's introduction of summary charts because the government had not provided Harris's counsel with the underlying records in a timely manner, as required by Federal Rule of Evidence 1006. The district court denied this motion, finding that the government had produced the summary evidence and underlying data reasonably early. At the final pretrial conference, Harris renewed his objection to the government's use of summary evidence, specifically exhibit 610, arguing that the exhibit was based on other summaries, exhibits 303, 320, and 346, which did not qualify as business records under Federal Rules of Evidence 803(6) and 902(11). The court again overruled his objection and allowed the government to present exhibits 303, 320, 346, and 610. We review the district court's ruling for abuse of discretion. *See Griffin*, 689 F.3d at 592.

Federal Rule of Evidence 1006 provides:

The proponent may use a summary, chart, or calculation to prove the content of voluminous writings, recordings, or photographs that cannot be conveniently

examined in court. The proponent must make the originals or duplicates available for examination or copying, or both, by other parties at a reasonable time and place. And the court may order the proponent to produce them in court.

We have interpreted Rule 1006 to include five distinct requirements in order for a summary exhibit to be deemed admissible. *See United States v. Bray*, 139 F.3d 1104, 1109–10 (6th Cir. 1998) (the "*Bray* factors"). Only the second *Bray* factor is at issue here:[2] the proponent of the summary exhibits must make the underlying documents "available for examination or copying, or both, by other parties at [a] reasonable time and place." *Id.* at 1009. Harris contends that exhibits 303, 320, and 346 are summaries, for which the government was required to submit the underlying trade records.[3]

As stated by Harris and testified to by Special Agent McGovern at trial, exhibit 610 was a "combination of prior exhibits," including exhibits 303, 320, and 346. Exhibits 303 and 346 were "trade blotters," or compilations of trade records created by clearing firms. Finally, exhibit 320 was a summary of a trade blotter created by Agent McGovern.

The district court did not abuse its discretion in admitting exhibits 303 and 346 because they were created by clearing firms as part of their regular business practice and were admissible under the business-records exception. Fed. R. Evid. 803(6); *see United States v. Laster*, 258 F.3d 525, 529 (6th Cir. 2001). Thus, the government was not required to provide all of the underlying trade records because these trade blotters were reliable and were not summary evidence. *See Cobbins v. Tenn. Dep't of Transp.*, 566 F.3d 582, 588 (6th Cir. 2009).

With regard to exhibits 320 and 610, the district court did not abuse its discretion in finding that these exhibits were valid summary evidence under Rule 1006. The district court determined that the government had produced all underlying bank records and clearing firm

---

[2]Although Harris asserts that the exhibits "may have failed to satisfy the other requirements [of Rule 1006], too: were the underlying records too voluminous to conveniently examine in court? Were they admissible? And was the summary accurate and non-prejudicial? It is impossible to say, because the government did not produce the underlying records," he does not specifically address these factors.

[3]The government argues that this is the first time Harris has made this specific argument. Thus, the government contends that we should review the district court's denial for plain error. *See United States v. Calvetti*, 836 F.3d 654, 664 (6th Cir. 2016). Harris responds that he made this argument below, and it appears that Harris's counsel did argue this point before the district court. Thus, we will apply the abuse of discretion standard, as previously set forth.

records months before trial and had informed defense counsel that certain Bloomberg market data was publically available. This finding does not appear to be clearly erroneous based upon the record. *See United States v. Salgado*, 250 F.3d 438, 451 (6th Cir. 2001) ("In reviewing a trial court's evidentiary determinations, this court reviews . . . for clear error the [trial] court's factual determinations that underpin its legal conclusions."). Thus, the district court did not unreasonably apply the law in determining that exhibits 320 and 610 met the second *Bray* criterion. 139 F.3d at 1109. Furthermore, as established herein, the underlying trade blotters were admissible as evidence under the business records exception. *Id.* at 1109–10. The district court did not abuse its discretion in admitting exhibits 303, 320, 346, and 610, and we affirm its ruling on that issue.

## III.  Fiduciary Duty Jury Instruction

Third, Harris argues that he is entitled to a new trial on all counts because the district court erred in instructing the jury that a stockbroker owes his clients certain fiduciary duties.

Pre-trial, the government filed a motion seeking to preclude Harris from arguing that he had no duty to disclose to customers that he was receiving kickbacks from stock issuers. Harris opposed the motion, arguing that he had no such fiduciary duty as a matter of law. The district court granted the government's motion. Following presentation of the evidence at trial, over Harris's objection, the district court gave the jury the following instruction with regard to Harris's fiduciary duty to his customers:

> I instruct you that a fiduciary owes a duty to his customer to disclose all material facts concerning the transaction entrusted to him. Matters entrusted to a stockbroker include those transactions in which the stockbroker makes recommendations to a customer regarding buying or selling stock. The concealment by a fiduciary of material information which he or she is under a duty to disclose to another, under circumstances where the non-disclosure can or does result in harm to the other is a breach of the fiduciary duty and can be a violation of federal laws, if the government has proven beyond a reasonable doubt the other elements of those offenses, as I explained them to you.

We review the district court's jury instruction for abuse of discretion and examine "the jury charge as a whole to determine whether it fairly and adequately submits the issues and the law to

the jury." *United States v. Newcomb*, 6 F.3d 1129, 1132 (6th Cir. 1993) (citing *United States v. Williams*, 952 F.2d 1504, 1512 (6th Cir. 1991)).

Harris argues that the district court instructed the jury that a stockbroker has a fiduciary obligation to disclose his compensation any time the broker recommends a stock. He is incorrect. The district court's instructions made clear that the jury had to find a fiduciary relationship existed before it could convict Harris on the government's failure-to-disclose theory. "[P]articular factual circumstances may serve to create a fiduciary duty between a broker and his customer," even though "there is no general fiduciary duty inherent in an ordinary broker/customer relationship." *United States v. Skelly*, 442 F.3d 94, 98 (2d Cir. 2006) (citation omitted).

In light of established Second Circuit case law relied upon by both of the parties, the instruction rendered by the district court was not an abuse of discretion. It "fairly and adequately" explained the law to the jury, *Newcomb*, 6 F.3d at 1132, and was not "confusing, misleading or prejudicial," *United States v. Myers*, 854 F.3d 341, 354 (6th Cir. 2017) (citation omitted). Thus, we affirm the district court's use of this particular jury instruction.

## IV.　　Extraneous Influence on a Juror

Finally, Harris argues that the district court abused its discretion by failing to conduct a *Remmer* hearing after he presented evidence that a juror may have been improperly influenced during trial.

On September 6, 2016, Harris received a notification from LinkedIn that other LinkedIn members had recently viewed his LinkedIn profile. Harris opened this email the next day, after the jury had returned its verdict. Shortly thereafter, Harris discovered that one of the persons who viewed his profile was Christian Goleno, a student at Youngstown State University, located in the city where Harris's trial was conducted. The record is inconclusive regarding the exact date Goleno viewed Harris's profile, but the September 12, 2016 LinkedIn profile-views-summary page indicates that it was sometime between August 28 and September 12, 2016. Harris's trial began on August 24, and the jury was discharged on September 7, 2016.

Harris then discovered that Goleno's Facebook profile featured pictures of her and a juror from Harris's trial, Juror Number 12 ("Juror 12"), and Juror 12's profile featured pictures of Goleno. The voir dire transcript confirmed that Goleno was Juror 12's live-in girlfriend. Goleno and Harris had no personal connection, and Harris's trial had received little publicity. Thus, Harris concluded that Juror 12 must have discussed the trial with his girlfriend. Harris surmised that Goleno had probably searched his name on Google because his LinkedIn profile was on the first page of search results. Information regarding FINRA's investigation of Harris, which led to his permanent bar from FINRA, was also on the first page of Google results. The government was precluded from presenting evidence of this investigation during Harris's trial.

Harris filed a motion for a *Remmer* hearing in order to determine whether Juror 12 was improperly exposed to prejudicial extraneous information about Harris during trial. *See Remmer*, 347 U.S. at 230. The government argued in response that Harris had not made a "colorable claim of extraneous influence." *See United States v. Davis*, 177 F.3d 552, 557 (6th Cir. 1999). In Harris's reply, he requested that the court at least allow him to interview Juror 12 and Goleno. The district court denied Harris's motion, declining to either hold a *Remmer* hearing or allow Harris to investigate further. It concluded that it was "more likely" that Goleno "never had an actual communication with Juror Number 12."[4] We review the district court's denial of a

---

**4**Specifically, the district court stated:

While Defendant's exhibits may very well establish that Ms. Goleno viewed Defendant's LinkedIn profile and knew Juror Number 12, he offers little else other than speculation. Defendant speculates that Ms. Goleno learned of prejudicial information and communicated the prejudicial information to Juror Number 12. In sum, Defendant has done nothing more than raise a possibility of bias—a bar he must surpass for the Court to grant his motion and conduct a *Remmer* hearing. Furthermore, there is a well established presumption that the jurors, including Juror Number 12, followed the Court's instruction not to discuss the case with anyone and not to conduct any outside research while the trial was being conducted. *See United States v. Guzman*, 450 F.3d 627, 629 (6th Cir. 2006). Not only did Juror Number 12 repeatedly receive this instruction, along with the other jurors, he responded in the negative each time this Court inquired about whether any juror had any improper contacts or attempted contacts that should be brought to the Court's attention. The inquiry was made each time the jury entered the courtroom after a prolonged absence from the courthouse.

Assuming the connection drawn between Juror Number 12 and Ms. Goleno is accurate, a more likely explanation is that Ms. Goleno learned that Juror Number 12 had been seated as a juror. She then, as "this age of the internet" allows: visited the Court's public website; found the trial in progress; decided to inquire further by visiting LinkedIn; and never had an actual communication with Juror Number 12. Nothing about this is improper or surprising in this age of technology.

*Remmer* hearing for abuse of discretion. *United States v. Lanier*, 870 F.3d 546, 549 (6th Cir. 2017).

In order to safeguard a criminal defendant's right to a panel of impartial jurors under the Sixth Amendment, when a defendant presents a "colorable claim of extraneous influence," the court "has a duty to investigate and to determine whether there may have been a violation of the constitutional guarantee." *United States v. Perry*, 438 F.3d 642, 651 (6th Cir. 2006) (internal citation omitted); *United States v. Owens*, 426 F.3d 800, 805 (6th Cir. 2005); *see Remmer*, 347 U.S. at 229 ("[A]ny private communication, contact, or tampering directly or indirectly, with a juror during a trial about the matter pending before the jury is, for obvious reasons, deemed presumptively prejudicial."). In such cases, a district court must conduct a *Remmer* hearing in order to afford the defendant an opportunity to establish bias. *See United States v. Rigsby*, 45 F.3d 120, 124–25 (6th Cir. 1995) ("When there is a credible allegation of extraneous influences, the court must investigate sufficiently to assure itself that constitutional rights of the criminal defendant have not been violated.").

Here, Harris presented credible evidence that Goleno found his LinkedIn profile, likely from searching for him on Google. The first page of Google results also included prejudicial information that the government was precluded from introducing at trial. Although the district court admonished the jury not to discuss the case with others, under the circumstances here, it is quite possible that Juror 12 told Goleno about the trial, leading her to Google Harris and to potentially communicate her findings to her live-in boyfriend, Juror 12.

Although Harris did not establish that Juror 12 was exposed to unauthorized communication, Harris did present a colorable claim of extraneous influence, which necessitated investigation. The district court had "considerable discretion" in determining how to investigate, *United States v. Taylor*, 814 F.3d 340, 348 (6th Cir. 2016), but its decision to neither hold a *Remmer* hearing nor allow Harris to investigate was an abuse of discretion. *See United States v. Herndon*, 156 F.3d 629, 637 (6th Cir. 1998) ("While this court affords broad discretion to the district court in determining the type of investigation necessary to determine juror bias, the

---

Not only is this scenario far more likely than that offered by Defendant, it discourages the notion that Juror Number 12 had improper communications with Ms. Goleno.

district court must provide the defendant a meaningful opportunity to prove the same."). Thus, the district court abused its discretion by failing to conduct an evidentiary hearing on the allegations of extraneous influence on Juror 12.

We vacate the judgment of the district court and remand for a hearing pursuant to *Remmer*, 347 U.S. 227. If the district court finds that Harris was prejudiced by jury misconduct, then Harris will be entitled to a new trial on all counts. If not, then his conspiracy and fraud convictions will stand. *United States v. Corrado*, 227 F.3d 528, 532 (6th Cir. 2000); *see Owens*, 426 F.3d at 805 (stating that this court routinely remands when a district judge fails to conduct a *Remmer* hearing in spite of a colorable claim of extraneous influence).

In sum, we **REVERSE** Harris's conviction on Count 5, obstruction of justice, and **REMAND** for either a retrial on Count 5 or resentencing on the remaining counts, at the government's option. We **VACATE** the judgment of the district court denying Harris's request to investigate the allegations of extraneous influence on Juror 12 or to hold a *Remmer* hearing and **REMAND** for a *Remmer* hearing. We **AFFIRM** Harris's convictions on Counts 1, 2, 3, and 4, except that if, following a *Remmer* hearing, the district court finds that Harris was prejudiced by juror misconduct, Harris will be entitled to a new trial on all counts.