**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
**File Name: 07a0759n.06**
**Filed: October 25, 2007**

**No. 06-2649**

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| RICKEY MARTIN, | ) | EASTERN DISTRICT OF MICHIGAN |
| | ) | |
| Defendant-Appellant. | ) | |

Before: MARTIN, GIBBONS, and SUTTON, Circuit Judges.

SUTTON, Circuit Judge. Rickey Martin challenges his criminal-contempt conviction and the six-month sentence that went with it. We affirm.

I.

Rickey Martin pleaded guilty to willful destruction of government property, *see* 18 U.S.C. § 1361, after "swinging wooden doors separating spectators from participants" in a federal courtroom and causing damage. JA 7. He received a six-month sentence, consecutive to his then-pending felon-in-possession sentence, along with a two-year term of supervised release. Just over two years later, the district court issued a warrant for Martin's arrest based on violations of the terms of his supervised release.

At the hearing, the district court found that Martin had committed "flagrant and persistent" violations. JA 38. It noted that he had possessed firearms on two occasions, failed to appear for appointments with the probation officer, failed to notify the probation officer prior to a change in residence, tested positive for marijuana use, associated with persons engaged in criminal drug activity, failed to cooperate in a substance abuse program—he fell asleep during an intake interview and missed several appointments—and failed to pay monetary penalties. As the court spoke, Martin attempted to explain the violations, but his attorney and the court told him to wait until he was questioned or otherwise given an opportunity to speak.

After finding that Martin had violated the conditions of his supervised release, the district court sentenced Martin to the statutory maximum—a 24-month prison term. JA 111. In doing so, the court noted that it had "considered the advisory guideline range" of 21 to 24 months and the § 3553(a) factors, particularly the "seriousness of the series of offenses." JA 112–13. "It seems to me," the court told Martin, "you have very little respect for yourself . . . and almost no respect for other people. It's just, it's astounding how consistently obstructive you've been. . . . [Y]ou're like a child. You're like a six-year old child in a five-foot-ten-inch body . . . ." JA 113–14.

Apparently offended by the sentence and the court's explanation for it, Martin spontaneously responded: "I don't have to sit here and hear you talk to me like this, man." JA 114. When the court advised Martin that he was required to listen, Martin responded, "You just sit here and disrespect me, man. . . . If you're not happy with yourself, then don't be happy with yourself. Don't put me down." JA 114. Attempting to explain an episode in which he fell asleep during a treatment

session, Martin continued, "[The treatment counselor] asked me why . . . was I asleep. I said because I was up all night . . . having sex. He said, do you think the Court would object to that. I said how can the Court object to something I was doing at home. . . . [T]hey wouldn't object to you having sex with your wife, would they? What, you want me to be gay? I ain't got to be gay, do I?" JA 114–15. Despite a warning from his attorney, Martin insisted that he was "not stopping." JA 115. "The man's sitting up here disrespecting me," Martin added, "He's not going to disrespect me, man. I'm not no bitch." *Id.*

With that, the court found Martin in contempt of court and said it would impose a consecutive six-month sentence. It then gave Martin's counsel an opportunity to respond, and counsel asked that the court not impose the sentence. Martin interrupted, "I don't want no mercy. I'm going to take that six months, baby, and spit it back at him." JA 116. The court imposed the proposed six-month sentence and noted that Martin had consumed the court's time, that he had interfered with the court's exercise of its responsibilities and that five officers were accompanying Martin—an "unusual expenditure of Court and staff and Marshall Service resources." JA 120. The court issued a 12-page opinion and order explaining its finding of contempt and its sentence. *See* Fed. R. Crim. P. 42(b).

## II.

We review a trial court's exercise of its summary contempt power for abuse of discretion, asking whether the court made "a clear error of judgment." *United States v. Meacham*, 65 F. App'x

529, 533–34 (6th Cir. May 15, 2003). Because the district court has a "unique vantage point[] in these situations," we give it "a great deal of deference" over when to use the contempt power. *Id.* at 534.

A.

Rule 42(b) of the Federal Rules of Criminal Procedure says that a court "may summarily punish a person who commits criminal contempt in its presence if the judge saw or heard the contemptuous conduct and so certifies." *See also* 18 U.S.C. § 401(1). The contempt power "rests on the need to maintain order and a deliberative atmosphere in the courtroom," *Bloom v. Illinois*, 391 U.S. 194, 209–10 (1968), and should be exercised when "an open, serious threat to orderly procedure [requires] instant and summary punishment . . . to fill the need for immediate penal vindication of the dignity of the court," *Harris v. United States*, 382 U.S. 162, 165 (1965) (internal quotation marks omitted). To sustain a summary-contempt conviction, we generally require a four-part showing: (1) the defendant's conduct must constitute "misbehavior," (2) "the misbehavior must amount to an obstruction of the administration of justice," (3) the conduct must take place in the presence of the court and (4) the defendant must have the "intent to obstruct." *In re Chandler*, 906 F.2d 248, 249 (6th Cir. 1990).

In challenging his conviction, Martin complains only about the second element of the offense, claiming that his conduct did not pose a threat to the administration of justice. It is true, as Martin points out, that a defendant's misbehavior "must be an actual, not a theoretical obstruction" to the administration of justice. *Vaughn v. City of Flint*, 752 F.2d 1160, 1168 (6th Cir. 1985); *see also*

*Craig v. Harney*, 331 U.S. 367, 376 (1947). At the same time, though, a litigant need not be violent or use physical force to expose himself to contempt, *see Vaughn*, 752 F.2d at 1168; unsolicited objections and repeated interruptions by themselves may suffice, *see Meacham*, 65 F. App'x at 534; *Gordon v. United States*, 592 F.2d 1215, 1217 (1st Cir. 1979) ("[T]here is a point at which mere words are so offensive and so unnecessary that their very utterance creates a delay which is an obstruction of justice."). Proving the point, we have concluded that a litigant obstructed the administration of justice when he "interject[ed] an unsolicited objection to the court's ruling" and repeatedly interrupted the court. *Meacham*, 65 F. App'x at 531, 534 (upholding contempt conviction when, after the court explained its reasoning, the defendant responded, "People . . . come to this courtroom and tell lies. . . . That's what I know. That's what you think otherwise. You sit up there, I mean, you're God.").

Martin's repeated interruptions, offensive language and unsolicited comments obstructed the administration of justice. In point of fact, Martin's conduct was more egregious than the conduct at issue in *Meacham*. His language was more offensive; he defied repeated warnings to remain quiet; he consumed a greater amount of the court's time; and he prompted five officers to accompany him. Under these circumstances, the district court did not abuse its discretion in holding that Martin's conduct posed a real threat to the administration of justice.

Martin suggests that summary proceedings are warranted only when a defendant directs profanity, verbal threats or threatening physical gestures to the court and that we should excuse his conduct because it was "a direct response to the district court's pointed assessment of [his] maturity

level." Br. at 11. But this suggestion adds a gloss to our interpretation of Rule 42(b) that does not exist. As *Meacham* shows, even nonprofane interruptions and direct responses to the court's statements may pose a threat to the administration of justice and thereby warrant summary proceedings. *Meacham*, 65 F. App'x at 534; *see also United States v. Giovanelli*, 897 F.2d 1227, 1232 (2d Cir. 1990) ("[A] judge need not tolerate disrespect or a deliberate show of defiance in open court.").

Martin also argues that the trial judge should have recused himself from the contempt proceeding. While the Federal Rules of Criminal Procedure require a judge to recuse himself from *non*-summary contempt proceedings if the contempt "involves dispespect toward or criticism of a judge," Fed. R. Crim. P. 42(a)(3), there is no such requirement for summary contempt proceedings, *see* Fed. R. Crim. P. 42(b). Nor did the judge become so "personally embroiled" in the controversy that due process required recusal. *Mayberry v. Pennsylvania*, 400 U.S. 455, 465–66 (1971) (holding that due-process principles prevent a judge from waiting until the end of a trial to render a summary contempt conviction when the individual makes "highly personal aspersions" that "are apt to strike at the most vulnerable and human qualities of a judge's temperament") (internal quotation marks omitted); *United States v. Meyer*, 462 F.2d 827, 840 (D.C. Cir. 1972). Martin's comments did not amount to personal attacks on the judge but attacks on the judge's exercise of authority in that case. And nothing in the record raises "such a likelihood of bias or an appearance of bias that the judge was unable to hold the balance between vindicating the interests of the court and the interests of [Martin]." *Taylor v. Hayes*, 418 U.S. 488, 501 (1974) (internal quotation marks omitted).

B.

Martin also challenges his six-month sentence. Congress has authorized federal courts to punish contempt "by fine or imprisonment, or both, at its discretion," 18 U.S.C. § 401, and has not prescribed a statutory sentencing range, *see United States v. Goldberg*, 8 F. App'x 391, 393 (6th Cir. Apr. 17, 2001) (per curiam). In the case of a summary-contempt conviction, the right to a jury trial protected by the Sixth Amendment limits the permissible sentence to six months. *See Cheff v. Schnackenberg*, 384 U.S. 373, 380 (1966) ("[S]entences exceeding six months for criminal contempt may not be imposed by federal courts absent a jury trial or waiver thereof."); *see also Bloom*, 391 U.S. at 209–10.

The sentencing guidelines do not apply to contempt convictions carrying sentences of six months or less. *See* U.S.S.G. § 1B1.9 & cmt. n.1; *In re Solomon*, 465 F.3d 114, 119–20 (3d Cir. 2006); *United States v. Ortiz*, 84 F.3d 977, 979 (7th Cir. 1996). The sentence may account for factors such as the extent of the defendant's willful and deliberate defiance, the seriousness of the consequences, the public interest and deterrence. *United States v. United Mine Workers*, 330 U.S. 258, 303 (1947); *Goldberg*, 8 F. App'x at 393. "Because of the nature of these standards, great reliance must be placed upon the discretion of the trial judge." *United Mine Workers*, 330 U.S. at 303; *see also Goldberg*, 8 F. App'x at 393.

The trial court did not abuse its discretion in giving Martin a six-month sentence for his outbursts. The court could fairly find that Martin's behavior was "a gross contempt of court," JA 119, and that he was "a fundamentally disrespectful, obstreperous individual" who "show[ed] very

little regard for others and especially those in positions of authority," JA 118. Even after the judge offered Martin an opportunity to respond to the sentence, Martin continued his tirade, "I don't want no mercy. I'm going to take that six months, baby, and spit it back at him. . . . Put it on my back, baby. It's nothing." JA 116. The court attempted to interject twice, but Martin continued, "I don't want no mercy from you, man, not the way you just sat here and talked to myself. You don't know what my life's like. You ain't lived like me. You can't just sit here and dog me because of what I've been through in the past." JA 116–17. On this record, the sentence did not amount to an abuse of discretion.

III.

For these reasons, we affirm.